Good morning, Your Honors. May it please the Court, Nick Sansone on behalf of Brandon Briskin. With the Court's permission, I'd like to reserve three minutes for rebuttal. Thank you. The claims in this case arise directly out of Shopify's decision to extend its profitable course of commercial activity into California. Shopify uses its own online interactive platforms to collect sensitive personal and financial data from California shoppers. Shopify installs tracking software on California shoppers' devices that allow it to continuously monitor the shoppers' online activities, even after the initial transaction is complete. Shopify then uses the data it collects through this process to build individualized profiles of specific Californians that it then sells on to third parties for a profit. Every step in this process of data extraction and monetization is a product of Shopify's decisions about how to structure its commercial operations in order to make money. And despite Shopify's efforts to shunt responsibility for its own profitable California activities on to third parties, it was Shopify, not any third party, that decided to make money by promising online merchants that it would process consumer transactions wherever they occurred, including in California. And it was Shopify, not any third party, that decided to turn its access to California consumers to its own advantage by developing its own entirely independent moneymaking scheme of selling California consumer data to eager buyers. Let me tell you my concern that I'd like you to address as you go about. What you're proposing that in this, obviously, age of the internet, that most of us shop online and we understand that things are going to be out there. And I'm not really sure how we would cabin what you're talking about and assume for the sake of argument that Briskin was on vacation in Texas when he made the purchase, but then returns to California after Shopify extracts his data. What connection to California do you assert Shopify has in this scenario? I'm wondering if you're proposing a rule that follows the plaintiffs. So everywhere the plaintiffs go, then, therefore, they can create jurisdiction. And I know that you analogize your case to, I think, Maverick's photo. But in that case, brand technologies had a specific focus on California, given the celebrity and entertainment-centric nature of its business. So what do you contend in this is the specific focus of Shopify's connection to California? So that's kind of my basic concerns. If I am to accept your argument, is then everywhere I go and I buy something, which, trust me, everywhere I go, I do buy something. So I'm the perfect plaintiff traveling here. Do I get to create jurisdiction? I absolutely understand Your Honor's concern. And I think the best case to sort of provide a roadmap to address some of those concerns is this court's decision from last month in Herbal Brands. And what Herbal Brands stands for is that certainly in that case, shoppers in all 50 states could have accessed the defendant's sort of web platform. The defendant in that case was a vendor of products online. The court held that express aiming was satisfied by the sale of a single product into Arizona. And in so holding, the court did not create a jurisdictional rule that focused on the plaintiff's contacts with the forum state. The rule focused on what is the business model of the defendant. Didn't the opinion kind of take pains to say, well, this is about physically selling a product or causing it to be sold through a distribution network? Is that similar to what we have here? That is similar to what we have here in the sense that Herbal Brands reflected the deliberate and continuous exploitation of an in-state market. So here we don't have Shopify profiting by selling products to the consumers. But we have Shopify extracting valuable consumer data and then using that data to make money by selling it on to third parties. So Your Honor is correct that it's not precisely the same conduct, but it is relying on the accumulation of data derived from California, derived also from Arizona, derived from Nebraska. Your Honor is completely correct that this is a nationwide operation. But the nationwide scope of Shopify's operation is owing to Shopify's choice. It could say, for example, we don't like California's data privacy laws. We therefore refuse to process or engage in consumer processing transactions in California. We'll do it in all other 49 states. Obviously, it may not be a profitable decision to sort of carve a jurisdiction out that way. But what we know from Keaton, from Maverick's photo, and from Herbal Brands is where a defendant structures its business so that it is operating in all 50 states. The nationwide scope of its conduct doesn't insulate it from jurisdiction in each of those 50 states where it does business. Unless, of course, the contact arises through some random, fortuitous, or isolated chance. That's obviously not what we have here. We know that Shopify has contracts with over 80,000 California merchants. It knows it's pulling a great deal of data from California, and it makes a lot of money from doing exactly that. But the claim here is not dependent on any merchant being from California or any plaintiff being from California, right? That's exactly right, Your Honor. Our focus is on the transaction itself because that is the point of contact between Shopify and the forum state. The transaction seems indifferent to the location then, doesn't it? The transaction is indifferent to the location in the sense that Shopify has agreed that it will process these transactions wherever they take place. And Shopify culls data from these transactions wherever they take place and decides to use that data for its own commercial gain. That's absolutely right, but that's because of Shopify's choice to run a nationwide operation. Again, at any point in this process, whether on the front end in terms of what arrangements it makes with merchants, it could say, we're not going to process transactions in X state. We'll process only transactions that have geolocation data that associate them with some other state. I mean, some of these arguments that you're making could have applied to AMA also, right? I mean, AMA is talking about a forum-specific focus. So where is that here? So AMA addressed content that was the passive display of content online. The defendant in that case ran an adult website and it posted images. Let me ask you, just when you're answering Judge Bress, you used the word national on Shopify. And so when you respond to his question on AMA, isn't Shopify more a national or international focus for its business? You said it's a national business. So why isn't the case more like AMA? So when you answer his question, can you answer that question? Absolutely. Because I heard national. I'm a cross-examiner by nature. Certainly, I appreciate that. So AMA was a case where the defendant's conduct was comparable to Maverick's photo, where what the defendant was alleged to have done was place infringing content online. And users anywhere could access that. But it wasn't necessarily clear in AMA, whereas it was in Maverick's photo, that the defendant was making money off of an in-state market. Here, we know that Shopify is making money off of an in-state market because that's precisely the point of its data extraction activities. By collecting hundreds of thousands of Californians' data and then selling that data on, it's enjoying access to a very lucrative market. So I think the closer analogy to this case, rather than AMA, is Keaton, where you had a nationwide publication. And in that case, you even had an out-of-state plaintiff who suffered no direct injury in-state. An out-of-state plaintiff sued an out-of-state defendant in New Hampshire because the defendant's publication circulated there. The defendant benefited from the systematic and continuous exploitation of that New Hampshire market. And it didn't really matter how many copies of the publication compared. The Supreme Court did not require a New Hampshire-specific focus for the publication. It said, you're making a lot of money by selling tens of thousands of copies of this magazine in New Hampshire. And I think the same is true, as well, in Herbal Brands. Let me ask you a question, please. So there, the defendant was selling magazines in the form. Here, Shopify is selling a software platform, and they are targeting the merchants, right? So I see a distinction between their activities directly targeting merchants and the consumer. And I did not understand your brief to argue that they could be subject to personal jurisdiction in California because they targeted Californian merchants. And this morning, you've talked about inserting themselves in transactions with Californians. Do you see that distinction? And am I correct that your argument is not that they targeted California by targeting California merchants? That's correct. The California merchants are relevant because their contacts with California merchants make clear that their processing of these California transactions and the extraction of data out of California from the end consumers was not random, isolated, or fortuitous, but that it was. So you're arguing that because they targeted the merchants, merchants everywhere, but including specifically targeting California merchants, that was, in effect, targeting California consumers? Not quite. And I think it's an important clarification to make. It shows that the targeting of the California consumers was not a sort of happenstance. But I think it's important to sort of disaggregate the two streams of revenue that Shopify gets. One stream of revenue it gets is it contracts with these third-party merchants to provide online services across the country, wherever the transaction takes place. And you're not arguing that is the basis for personal jurisdiction because your claims don't arise from those transactions, right? I mean, the merchants are not suing Shopify for something that's wrong with the software, right? That's correct. The other stream of revenue that Shopify gets, the other way in which it commercially exploits the California market, is that because of the opportunity provided by these third-party contracts with these merchants, Shopify has access to vast numbers of California consumers and their online transactions. And what Shopify chooses to do for its own commercial benefit, not for the merchant, is while it is linked electronically with these shoppers in California, it installs tracking software on their devices that last indefinitely and continue to transmit information about the online activities of these shoppers, even after the transaction is done. And then Shopify chooses to take all that data that it's sucked out of those transactions, both the merchant-focused transaction and the other transactions that the California consumers engage in, and sell that California-derived data onto third parties. And that is principally where the focus and the targeting comes in. That is the business operation and the commercial exploitation of the California market, as well as the markets of all the other 49 states, that makes it both fair and consistent with principles of federalism to allow California to require Shopify to answer for that connection with the California consumers in its courts. Judge Bresch, do you have any additional questions? I'm okay. Thank you. All right. I know you wanted to save more for rebuttal. I'll give you three minutes for rebuttal. Thank you so much, Your Honor. Thank you. Good morning. Good morning, Your Honors. Moaz Kava on behalf of the appellees. May it please the Court. Plaintiffs' claims here fail for three fundamental reasons. First, the plaintiffs cannot establish, and they have not argued, in either this Court or in the district court, how these three defendants each individually satisfies the court's personal jurisdiction jurisprudence. And under the Supreme Court's decision in Rush v. Savchuk, which we cited in our brief, the personal jurisdiction analysis is necessarily specific to each defendant. You have to argue how each of them satisfies the test. Haven't they sufficiently alleged that, though? I mean, they've basically said each defendant is responsible for all of this. I'm not sure how they're supposed to know a whole lot more about this at this point. Well, all they've said is, well, we think you guys act together in some way, but there's actually no delineation in any plausible way of how that happens. For example, Judge Brass alleged someone sent an email. They don't say who sent an email. We have submitted affidavits saying, for example, that Shopify Inc. doesn't have anything to do with the credit card processing, that Shopify USA actually offers no services to merchants whatsoever. Yet you can't just sweep broadly and say they all get to come in, even though we don't have a basis to make an appropriate, even Rule 8-type allegation, identifying conduct that subjects each of these three entities to personal jurisdiction. And what the court said, the Supreme Court said in Rush, is you don't get to attribute one defendant's conduct onto another to satisfy the personal jurisdiction test. You have to say these three separate entities each did things to purposefully avail themselves of the forum and that the claims arise out of or relate to the conduct that that defendant engaged in in the forum state. It seems like a stronger argument when there's multiple unrelated defendants, but when they're related, it doesn't seem as strong. Your Honor, I think that may be true if there weren't affidavits that are appropriate and were appropriate to consider here. We have a record that was before the district court on what the different roles of these different entities are. And so in the face of that evidence, you don't just rely on an allegation, a broad one in a complaint, that everybody does everything together. Some more specificity is required under the Supreme Court's jurisprudence if you're going to try to hold multiple defendants liable. The second reason that they necessarily fail here is under, you know, Justice Thomas's opinion in Walden, where the court explained that the suit-related conduct must establish the connection to the forum, quote, in a meaningful way. And as the Court will recall, that the way the Ninth Circuit has applied Walden and the way the Ninth Circuit has applied the test generally is the defendants must purposefully avail themselves of the forum. They must do specific acts in the forum that are directed at and targeted to California. The third way the plaintiffs fail here is they have to then show that those forum-specific acts are sufficient, that their claims arise from or are related to those forum-specific acts. Well, we recently in Davis versus Cranfield, we recently expanded the concept of purposeful availment versus purposeful direction. If we were to apply the purposeful availment test instead of the purposeful direction test, would you still win? Yes. And why? Because it is not simply the benefit, Your Honor, of doing business in a State. So Judge — I think it was Judge O'Scanlan's opinion in Yamashita does apply the purposeful availment test. I think this Court has kind of said purposeful direction if it sounds in tort, purposeful availment if it sounds in something different. But in Yamashita, where purposeful availment was applied, the Ninth Circuit did not veer off of the traditional requirements that are necessary to establish personal jurisdiction. There was no dispute in Yamashita, for example, that the lithium-ion battery manufacturer was selling its lithium-ion batteries across the country. That they were — in fact, there were allegations in that case that the very batteries, the nature of those batteries, the lithium-ion batteries that gave rise to the claims there, were sold into Hawaii. There was use of the ports of Honolulu. There were third-party websites that were selling the same type of battery into Hawaii that were at issue in that case. And in the Ninth Circuit, nevertheless, said that's not enough to get personal jurisdiction, even though the plaintiff was harmed in the State. And I think Judge Brass asked a very important question earlier, and I was sort of — I noted down the — all of the questions were important, but I noted down the answer in that case because, Judge Brass, you said, well, but the transaction itself, it's — you're indifferent to location where the transaction occurs. And the plaintiff conceded — appellants conceded that. Yes, it's indifferent. And there's plenty of case law in the Ninth Circuit that said that — that says that where the harm would occur essentially under plaintiff's theory, wherever the plaintiff may go. If the plaintiff was in Texas, then the harm would be in Texas and we'd be hailed into court in Texas. If the plaintiff was in Oregon, that's where we would have to end up, under the theory articulated by plaintiff appellant in this case. The other side mentioned Keaton. What's your response on that case? Well, Your Honor, Keaton and Mavericks that flows from it are unique because there is a very specific targeting of the market in question. In Mavericks, it was the market and the targeting of California. It was a site designed around California to exploit California. Here, the allegations are we offer a back-end service, not a consumer-facing service at all. Indeed, the entire complaint is premised on the idea that the plaintiff didn't even know about Shopify in the back end. We are offering a national or, as Justice Callahan pointed out, an international service to merchants around the world. Some of them, only 8% by plaintiff's own allegations are located in California, 8% of the merchants. Well, let's talk about the something more in terms of because my understanding of your argument is that you contend that AMA Multimedia is the case most directly on point. And I guess I would, I'll kind of give you a bunch of questions in here just to sort of tell you what my concern is that I want you to address. Yes, Your Honor. And so isn't there a distinction, a significant distinction between passively hosting a website and actively reaching out into a forum to extract data? And also, when we're talking about something more that would make this case more like Mavericks, we got a brick-and-mortar store and a fulfillment center in California. Since you say AMA is directly on point, and I'm pointing out some things that I think appellant could argue are something more, can you address that for me? Absolutely, Your Honor. So I'll take it. You can do it. I'll take the first one, the passively hosting versus actively reaching into a forum. There actually isn't an allegation in this complaint that Shopify reached into California and in California did something bad with respect to this plaintiff. What they're saying is Shopify had contractual relationships with California merchants. Plaintiff happened to be in California and purchased something through a third party, not a party to this lawsuit. And that, in sending plaintiff's credit card information, wherever it may have gone, it may not have gone to California at all. It may be in New York. It may be in New York. And wherever that processing occurred, plaintiff asserts there was some form of wiretapping. That is not like Mavericks, where there is a targeting of the forum. That is much more like AMA, where this court said even where 20% of the revenue for the defendant is coming from the forum, even where the defendant is advertising specific to the forum, even where the defendant is using geolocation targeted ads, that is not enough. Because in that case, international, and we also have international advertising, international reach does not mean you are specifically targeting the forum. Your second question, Your Honor, they do allege there's a brick and mortar store and that there's a fulfillment center in California. Now, whether or not Your Honors decide that that's enough under the first prong, that is the purposeful availment or purposeful direction prong, if that is enough to have the something more, it fails under the second prong they need to establish, which is the claim has to arise out of or relate to the forum-specific contact. The Supreme Court in the Ninth Circuit has consistently said that. Two of the three of you were on the LNS panel, as I recall, I think. And that came down shortly after the Supreme Court's Ford decision. And this court again said you may have contacts with the forum, but the claim has to arise from the contacts or be related to the contacts. There's no allegation here that this consumer did anything whatsoever or had any influence whatsoever interaction with a brick-and-mortar store in L.A. or a fulfillment center. And so those elements certainly, those facts certainly cannot establish purpose — cannot establish the personal jurisdiction test. And I did want to react, if I could, to herbal brands because the appellant cites that case. And again, I think the Court is exactly right. In that opinion, the Ninth Circuit, the panel went to great lengths to talk about how narrow the holding really was. In fact, in their own words, this is a narrow decision. And there are two requirements in that case. The first one was that the sale that was at issue in that case must occur as part of the defendant's regular course of business. And the second was that the defendant has to be a part of this sort of distribution of this product, the very product that gives rise to liability. Right. So we know, obviously, that those conditions are not met here. I think the plaintiffs are saying, well, data extraction and sale is sort of analogous, conceptually analogous, to what was going on in that case. So how do you address that? I think it necessarily isn't analogous to what's going on in that case. In that case, in herbal brands, Amazon hosted the — the defendant sold their product through Amazon. There was presumably a credit card processor in the back end there. That would be like saying, on the basis of herbal brands, now that plaintiff gets to bring in whoever hosted the site, Amazon, Etsy, eBay, whoever it may be, and Visa, MasterCard, whoever was processing the credit card, because they happened to contract with a merchant who happened to sell products into California. And if that is the rule, going back to one of the very first questions asked by the panel, we are talking about a limitless, borderless, personal jurisdiction jurisprudence in this court. Because in the world of e-commerce, there are always going to be the merchants at the front end that are engaging in business with consumers all around the country, and there are always going to be people on the back end helping facilitate those transactions, whether they are credit card processors, whether they are warehouses holding the goods, whether they are shipping companies, whether they are the Internet platform that is hosting the company's website, Google Web Services, et cetera, Amazon Web Services, et cetera. All of those parties are a part of, ultimately, the relationship, and all of those parties are absolutely contracting with merchants in California. But that has never been the law. And if you go back to the late 1990s, and this court's opinion in CyberCell, the court from that point said, we need to be very careful about personal jurisdiction law when it comes to the Internet, because then we will be allowing parties in every state, as long as you got hurt in that state, you can drag in a vendor, a website owner, a seller, a merchant, et cetera. But under your view, Shopify or a similar entity can conduct business in any state and make money in any state, but they would only be subject to personal jurisdiction in the forms where they have their principal place of business. So here, maybe Delaware or New York? I mean, is there personal jurisdiction over Shopify anywhere else in the country? Again, Your Honor, at the risk of going back to my earlier point, it depends on the entity, but I understand conceptually the point is it's where you're subject to general jurisdiction. And I think what the case law teaches is it's a case-by-case analysis. Judge Batey, you asked earlier, well, but the merchant isn't involved here, and your claims all go to the merchant. Maybe we would have a different analysis if this was a claim brought by a merchant in California arising out of Shopify's contact with that merchant in California. And I can see that would be a different analysis. But here, given the attenuated, not directional relationship between the plaintiff, appellant in this case, and Shopify, then yes, California does not have jurisdiction. Plaintiff is not left without remedy. They can go to Delaware. New York has a principal place of business for one of these entities. Those are available for a plaintiff to go and pursue their claims. But it cannot be simply that, well, because you sell everywhere, and again, here Shopify is not selling to consumers at all. Shopify is doing back-end work. Some of the Shopify entities are doing back-end work for the merchants. You must be subject to jurisdiction. Could the plaintiffs have brought these claims against the merchant that they purchased the product from? I see no reason why they couldn't have. That's with whom they have the relationship. That's with whom they chose to transact and do business. So certainly that was a possibility for them. And if they really believed that there was an underlying claim here, they could have brought a claim against an entity where that entity is subject to personal jurisdiction, including one of the Shopify entities. They chose not to do that here. They chose to cut out the actual party that they engage with and advocate, frankly, a theory that I don't believe would have any limits here. Because all of the plaintiff's arguments can apply in the e-commerce world broadly. Because everyone does business in California, essentially. But that's never the test. It's never been the test. And I think AMA made that clear. Just doing business, even really good business, in the jurisdiction does not suffice to satisfy the Walden test for personal jurisdiction. So would you say this is more like a stream-of-commerce case? I think there's an analogy to just putting a good into the stream-of-commerce here that does have some persuasive effect. But we—I would argue that we are not— the Shopify entities are not even putting a good into the stream-of-commerce, Judge Callahan. They are providing support to an entity that is putting goods into the stream-of-commerce. So we are even one step removed from those traditional stream-of-commerce cases. All right. Thank you. Let me make sure. Do either of my colleagues have any additional questions? All right. We've taken you over, but thank you for your arguments. I appreciate the time. Thank you, Your Honors. I think it may be helpful here to focus in on what exactly is the targeted act here that means that purposeful direction is satisfied. This Court's decision in College Source, which we cite at page 21 of our brief, that was a case in which an out-of-state defendant went online and misappropriated proprietary content from an in-forum plaintiff. This Court held that that was activity that was purposefully targeted at the forum state. The only difference really between the conduct in that case and the conduct in this case is that whereas the out-of-state defendant in College Source misappropriated protected content from one in-state plaintiff, defendants here are alleged to have misappropriated protected content from multiple in-state plaintiffs. And to be clear on my earlier point, yes, it is the case that Shopify is indifferent as to whether any one particular transaction, any one particular extraction of consumer data that it then uses for its own profit, as the defendant in College Source did. It's indifferent as to any one of those transactions takes place in California, but it's not at all indifferent as to whether or not it is able to extend those data extraction, those profitable activities into California. And to respond to my friend on the other side's concerns about, you know, the effects that this could have, you know, if, for example, there were a tort arising out of a credit card transaction, say, for example, Visa was in the business of sending malware, sending viruses onto individuals' devices when they were conducting consumer transactions that Visa made money by promising it would conduct, it would be very difficult, I think, to say California has no interest in protecting its consumers against that sort of conduct. And certainly the allegation here isn't that Shopify is transmitting malware that then, you know, destroys the plan's place. Right. You don't have the parade of horribles here. Right. But it does transmit into the forum state tracking software that stays on the user's device, that continually transmits information about the user's online activities to Shopify, and it seems difficult to say that the Constitution forecloses California from taking an interest in those forum-directed activities. So I see that I have run out of time, but unless the Court has any further questions. Let me just make sure. No, we apparently don't. All right. Thank you very much. Thank you. I want to thank both of you for an excellent argument in this case. I've been sitting all week, and this is my last argument. And it was the highlight of the week, so not speaking about there. There were other good moments, but thank you both for an excellent argument. This matter will stand submitted. The Court's in recess.
judges: CALLAHAN, BADE, BRESS